NO. 20-1014

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

PAUL M. JONES,

Plaintiff-Appellant,

v.

DOLAN CONNLY, P.C., JAMES W. DOLAN, BARBARA D. CONNLY,
KATHLEEN ALLEN, DAVID A. MARSOCCI and GREGORY A. CONNLY, et al.

Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

L.T. CASE NO. 19-CV-11076-FDS

BRIEF OF APPELLEES

David A. Marsocci, Esq.
BBO# 629429
DOLAN CONNLY, P.C.
50 Redfield Street, Suite 202
Boston, MA 02122
Phone: (617) 265-3100/ Fax: (617) 265-3101
dmarsocci@dolanconnly.com

Dated: June 18, 2020

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 7.1, Federal Rules of Civil Procedure, the defendant, Dolan

Connly, P.C. ("Dolan Connly"), hereby submits this Corporate Disclosure

Statement, and states as follows:

1. Dolan Connly does not have any parent corporation, and no publicly held

corporation owns 10% or more of its stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………….4

STATEMENT OF THE CASE……………………………………..……  6

NATURE OF THE CASE…………………………………………………..6

STATEMENT OF FACTS, COURSE OF PROCEEDINGS
AND DISPOSITION BELOW……………………………………….…9

SUMMARY OF ARGUMENT……………………………………… 11

ARGUMENT…………………………………………………...12

    I.    DISMISSAL OF CLAIMS AGAINST DOLAN CONNLY
        WAS APPROPRIATE WHERE JONES FAILED TO SUFFICIENTLY
        ALLEGE ANY VIOLATION OF FDCPA……………………...... 12

    A. STANDARD OF REVIEW……………………………………...12

    B. JONES' AMENDED COMPLAINT DOES NOT MEET HIS
       PLEADING BURDEN TO SUSTAIN HIS FDCPA CLAIM
       AGAINSTDOLANCONNLY…………………………………......14

    C. THE DISTRICT COURT CORRECTLY APPLIED THE STATUTE
       OF LIMITATIONS AND *OBDUSKEY V. MCCARTHY & HOLTHUS, LLP*
       DECISION TO THESE FACTS…………………………………....17

CONCLUSION……………………………………………………... 24

ADDENDUM………………………………….………………… 28

SUPPLEMENTAL RECORD APPENDIX…………………..…....SRA 001-024

# <u>TABLE OF AUTHORITIES</u>

Cases                                                                                              Page(s)

*Ashcroft v. Iqbal*,
556 U.S. 662,680-81 (2009) …………………………………………………… 12

*Attorney General v. Dime Savings Bank of New York, FSB*,
413 Mass. 284, 285 (1992). …………………………………………………… 17

*Barricello v. Wells Fargo Bank, N.A.,*
2016 WL 1244993 (D. Mass. Mar. 22, 2016)……………………………….. 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 559 (2007). …………………………………………....12, 13

*Cook v. Gates*,
528 F.3d 42, 48 (1st Cir. 2008)…………………………………………… 13

*Cortés-Ramos v. Martin-Morales*,
894 F.3d 55, 58 (1st Cir. 2018)…………………………………………… 12

*Everton v. HSBC Bank USA, N.A.*,
No. 18-10264-FDS 2018 WL 5084838, (D. Mass. Oct. 17, 2018)…… …….… 20

*Georgia Driz, LLC v. Spenlinhauer*,
2017 Mass. App. Div. 120, (XXXX)………………………………… …….. 17

*Gooley v. Mobil Oil Corp.*,
851 F.2d 513, 515 (1st Cir. 1998)…………………………………………… 13

*Homer Apartments, LP v. Postoronka*,
2013 Mass. App. Div. 6 (XXXX)…………………………………….....… 17

*Matter of Wade*,
969 F.2d 241, 249 (7th Cir. 1992)………………………………………... 14

*Obduskey v. McCarthy & Holthus*, *LLP*,
139 S.Ct. 1029 (2019)………………………………………….....… 3,17,21, 23

*Pessotti v. Eagle Mfg. Co.,*
946 F. 2d 974 (1st Cir. 1991)……………………………………...…….. 18

*Poutahidis v. Clingan,*
2001 Mass. App. Div. 217, 218 (XXXX)…………………………………… 17

*Rodi v. Ventetuolo,*
941 F.2d 22, 23 (1st Cir. 1991)…………………………………..….. 13

*Rotkiske v. Klemm,*
-- S. Ct. --, 2019 (WL 6703563 (Dec. 10, 2019)……………………………… 19

*Sepulveda-Villarini v. Dep't of Educ. of P.R.,*
628 F.3d 25, 29 (1st Cir. 2010)………………………………….…….. 12

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.,*
524 F.3d 315, 321 (1st Cir. 2008).  ………………………………….……... 13

## Statutes

15 U.S.C. § 1692………………………………………..…....…….. 6, 9

*15 U.S.C. § 1692k(d)* ……………………… …………………………..... 18

*15 U.S.C. § 1692f(6)*……………………………………………...…… 22

*15 U.S. C.* §1692f(6)(A)……………………………………………..….. 23

Mass. Gen. L. c. 186A…………………………………...…….. 15,16, 20

## Other Authorities

Federal Rules of Civil Procedure

Rule 7.1 ……………………………………………………..…..1

Rule 12(b)(6) ……………………………………………6, 10, 12

Rule 15(c)(1)(B) …………………………………………………18

## STATEMENT OF THE CASE

### A. Nature of the Case.

By this appeal, Plaintiff-Appellant, Paul Jones ("Jones") seeks to vacate the district court's Rule 12(b)(6) dismissal for Jones' failure to state a claim upon which relief could be granted.  Mr. Jones, although pro se, is no stranger to litigation pertaining to alleged violations from various parties related to his mortgage default and the foreclosure of his June 22, 2004 loan.  (Add. 011-031).  Some prior cases were either commenced in district court or were transferred there.  There were judgments issued in the federal court, the state trial court and the Massachusetts appeals court.  In the present matter, Jones himself commenced the action in federal court in an effort to forestall the pending eviction matter in the Stoughton District Court.  The complaint and the amended complaint are a lengthy and confusing hodgepodge of allegations purporting to set forth alleged violations of federal and state law relating to the foreclosure sale process and the subsequent eviction proceeding that was commenced by Dolan Connly, P.C.

It is frankly difficult to ascertain what Jones believes improper, unfair or not legal.  As stated by the district court, the amended complaint asserts five (5) claims. The only federal claim at issue in this appeal is an alleged violation of the Fair Debt Collections Practices Act ("FDCPA") 15 U.S.C. § 1692.

The complaint is difficult to decipher because Jones frequently conflates

parties, processes and procedures and his claims related to each.  As an example, Jones makes no distinction of parties between the law firm of Orlans, P.C. (and its two named attorneys) and Dolan Connly, P.C. (and its various named attorney employees) when speaking of the 2018 foreclosure sale.  Jones writes "…foreclosure sale…conducted by Appellees…and Dolan Connly P.C….."  (Appellant's Brief, Page 7, No. 1).  For the sake of clarity, Dolan Connly, P.C. and its employees, James W. Dolan, Barbara D. Connly, Kathleen M. Allen, David A. Marsocci and Gregory A. Connly, were not involved with and played no part in the 2007 foreclosure nor in the re-foreclosure in 2018.  And based on conversations with Mr. Jones, Jones is acutely aware of this fact.  More specifically, other than David A. Marsocci, no other employee of Dolan Connly, P.C. is even alleged by Mr. Jones to have played any part whatsoever in the eviction process commenced after the foreclosure in 2018.

To support his FDCPA claim against Dolan Connly, Jones merely parrots the FDCPA's statutory language or nonspecifically that Defendant-Dolan Connly, P.C. (or any of its employees) such as Appellee, "…violated, and continues to violate, the FDCPA…" (Appellant's Brief, Page 7, No. 3).  Jones does so with such sweepingly broad language, it is unclear what actual statements contained in written correspondence, or what actions, he maintains are violative.

What does seem clear is that Jones' foundational premise that Dolan Connly (or any of its individual named employees) violated any provision of the FDCPA is

predicated upon his belief of a supposed invalid foreclosure sale. But this false premise is further muddled by the inconsistent statements in Jones' complaint where on one hand he alleges the foreclosing mortgagee "…did not satisfy the requirements of paragraph 22 of the mortgage…." (Amend Compl. ¶ 30) or "…did not strictly comply with § 15A, which requires a foreclosing bank to notify the tax collector…this lapse invalidates the foreclosure…." (Amend Compl. ¶ 32); but on the other hand, alleges "BNY also foreclosed on the property on or about Dec 2008[1] (over 11 years) causing there to be no present right to possession of the property…."(Amend Compl. ¶ 47). Of course, if there was a valid foreclosure in 2008 (or more appropriately 2007), there would still be a valid right to possession in 2018. Similarly, if there was a foreclosure in 2018, there would be a right to bring an action for possession as occurred in 2018.

B. **Statement of Facts, Course of Proceedings and Disposition Below**.

Jones filed this action *pro se* in the United States District Court for the District of Massachusetts on May 9, 2018. At that time, it was a three (3) count complaint consisting of 131 allegations, an FDCPA claim, a wrongful foreclosure claim under state law and a Mass. Gen. L. c. 93A claim. Jones subsequently filed a purportedly verified Amended Complaint against Dolan Connly and the other defendants, asserting the same original three (3) counts and asserting two (2) new counts. When

---

[1] According to public records, the initial sale was actually December 3, 2007 (not 2008).

amended, the complaint contained 156 allegations and five (5) counts, consisting of (1) an FDCPA claim under 15 U.S.C. § 1692, (2) a claim of violation of paragraph 22 of the Mortgage (3) a Mass. Gen. L. c. 93A claim, (4) claimed violations of Mass. Gen. L. c. 244, § 35B and 35C; and (5) a Massachusetts debt-collection regulation claim under 940 CMR 7.00.

As taken from the Amended Complaint, Jones is a resident of Stoughton, Massachusetts. (Amend Compl. ¶ 1). Dolan Connly, P.C. is a law firm organized as a professional corporation, located in Boston, Massachusetts. (Amend Compl. ¶ 2-7). Bank of New York Mellon ("BNY") is a Delaware corporation with a principal place of business in New York. BNY was the trustee and foreclosing mortgagee of the mortgage at issue. (Amend Compl. ¶ 9). Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation with a principal place of business in Utah. SPS was the mortgage servicer. (Amend Compl. ¶ 14). Orlans, P.C. is a law firm, organized as a professional corporation, located in in Troy, Michigan. (Amend Compl. ¶ 10-12). There was a foreclosure sale on April 9, 2018. (Amend Compl. ¶ 46).

Jones asserts that "Defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Alison, Jane Doe. John Doe used 'false deceptive, misleading unfair, and unconscionable practices in connection with the attempt to collect an alleged but nonexistent defaulted debt from Plaintiff." (Amend Compl. ¶ 34). This bald allegation is made without any reference to what

communication Jones is speaking about. So it is unclear if he is referring to a notice received in 2007 or a notice received more recently in connection with the 2018 foreclosure or the subsequent eviction proceeding (the only involvement of Dolan Connly). Nor is there any reference to any supposed unconscionable practice.

But Jones does allege he [Jones] "…attempted to rectify the situation with the defendants Dolan, James, Gregory, Cindy, Barbara, Kathleen, David, BNY, Orlans, Linda, Allison, Jane Doe, John Doe *starting as early as July 28, 2015*." (*emphasis added*) (Amend Compl. ¶ 36). While this allegation is factually disputed because Dolan Connly's first letter to the Defendant was not until April 24, 2018, even if true, it would appear that by Jones' own statements, it is clear that more than four (4) years had passed before he filed his amended complaint on May 29, 2019 and dismissal was appropriate because any FDCPA claim was time barred.

Dolan Connly, and various other Defendants moved to dismiss the action on the grounds of Jones' failure to state a claim under F.R.C.P. Rule 12(b)(6). Dolan Connly's motion seeking dismissal was based primarily on the argument that its communication (written correspondence) with the Defendant was either required by law or sent in connection with the eviction proceeding and that Jones' claim was precluded by the applicable one (1) year statute of limitation.

On December 16, 2019, the district court (Saylor, J.) granted Dolan Connly, P.C., Orlans, P.C. Bank of New York Mellon and Select Portfolio's respective

motions to dismiss.  Specifically, the district court found that where Jones filed his action on May 9, 2019, "…any FDCPA claim must be based on violations that occurred no earlier than May 9, 2018."  With regard to Dolan Connly's actions related to the eviction, the court further found "…the act of eviction is even further removed from the collection of a debt than the act of foreclosure.  Accordingly, there is no valid claim under the FDCPA arising out of the eviction proceedings, …."  The court's decision further noted that "neither the complaint nor the exhibits contain any evidence suggesting that plaintiff's eviction involved any demand for payment." (Add. 007-008).

C. **Summary of Argument**

With respect Dolan Connly, P.C., Jones fails to set forth any facts regarding the nature or the content of the communication upon which the court could reasonably infer that Dolan Connly was (1) acting as a debt collector (2) took any action in connection with the collection of a debt and (3) that the actions taken violated the substantive proscriptions set forth in the relevant provisions of the FDCPA.

Jones failed to sustain his pleading burden under the Federal Rules of Civil Procedure, such that his FDCPA claims were properly found fatally deficient.

But even if Jones were previously able to put forth legally sufficient allegations concerning his claimed violations of the FDCPA, his claims would be

barred the applicable one (1) year statute of limitations where his claims arise out of the actions following the mortgage loan transaction default, the foreclosure sale and eviction process following the foreclosure.

And finally, even if Jones had set forth a potentially legitimate claim that was not barred by the applicable statute of limitations, any such claim against Dolan Connly, P.C. which arose purely out of its role as post-foreclosure eviction counsel would not be actionable in light of certain recently decided United States Supreme Court case law.

## ARGUMENT

### I.    DISMISSAL OF CLAIMS AGAINST DOLAN CONNLY WAS APPROPRIATE WHERE JONES FAILED TO SUFFICIENTLY ALLEGE ANY VIOLATION OF FDCPA.

#### A. <u>Standard of Review.</u>

A review the district court's dismissal of Jones' complaint for failure to state a claim is a de novo review. *Cortés-Ramos v. Martin-Morales*, 894 F.3d 55, 58 (1st Cir. 2018). "The make-or break standard is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,680-81 (2009)). The familiar *Twombly* standard clarifies that under Fed. R. Civ. P. 12(b)(6), a complaint must allege a "plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Jones' complaint

fails to do so.

In evaluating whether a plaintiff has met this burden, the Court will "accept[]
the complaint's well-pleaded facts as true and indulg[e] all reasonable inferences in
the plaintiff's favor." *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008).  But a clear
tenet that a court must accept as true all of the allegations contained in a complaint
is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,
556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Jones' complaint lacks the
necessary specificity to rise above being merely recitations of legal elements and
conclusory statements.

Mr. Jones, despite being an extremely active litigant, is a *pro se* party and *pro
se* complaints are accorded an "extra degree of solicitude", *Rodi v. Ventetuolo*, 941
F.2d 22, 23 (1st Cir. 1991).  Nonetheless, his complaint must "set forth factual
allegations, either direct or inferential, respecting each material element necessary
to sustain recovery under some actionable legal theory.*" Gooley v. Mobil Oil Corp*.,
851 F.2d 513, 515 (1st Cir. 1998).  He failed to do this and his complaint does not
contain any of the necessary factual allegations.

In addition to plaintiff's statements, the court may look to and consider
documents attached to the complaint as well as the complaint itself.  *Trans-Spec
Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).  And despite

the existence of some plausible allegations, a plaintiff "may plead [herself] out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992); see *Barricello v. Wells Fargo Bank, N.A.,* 2016 WL 1244993, at *10 (D. Mass. Mar. 22, 2016) ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation."). Jones' complaint had 168 pages of various exhibits. And these documents likely demonstrated that any theoretical claim that might have existed was barred by the statute of limitations but it was equally plausible the documents demonstrated there was no violation of the FDCPA by Dolan Connly, P.C. When the documents from Dolan Connly are examined, as there are only a few, it becomes vividly clear that there was no violation.

### B. Jones's Amended Complaint Does Not Meet His Pleading Burden to Sustain His FDCPA Claim Against Dolan Connly.

Jones erroneously contends on appeal that "the issue in this case is crystal clear … on the extent to which the FDCPA prohibits harmful debt collection practices that occur *in the context of foreclosure proceedings*." (*emphasis added*). (Appellant's Brief, Page 3).

But what is not clear is whether Jones is speaking in generalities or specifically about his own foreclosure proceeding. Again, Dolan Connly was not involved in the 2007 foreclosure sale or with the more recent 2018 foreclosure sale. Jones' statements in the complaint and the voluminous amount of documents

submitted with his complaint do make it clear that the first document that Jones ever received from Dolan Connly was dated April 24, 2018.  (Amend Compl. ¶ 141 and (Amend Compl. Exhibit 12).  (See also SRA 001-003).  Jones' inclusion of the April 24, 2018 correspondence as an exhibit to his complaint is very fortunate so the court was able to review the mandatory letter that was sent.  A review of the letter itself, demonstrates that it was merely a letter required by Massachusetts law (Mass. Gen. L. c. 186A) after a foreclosure.  There was no false statement or threatening tone and there is no demand for payment.  Jones mistakenly claims that the Chapter 186A letter and the enclosed form were sent separately.  But a review of the letter and the attachment make clear what was sent and that which was sent was not even addressed to the plaintiff.  The letter was addressed to "ANY & ALL OCCUPANTS or TENANTS…."  The letter further contained the following prominently displayed:

> **NO RENT IS BEING DEMANDED BY THIS NOTICE.  NO RENT IS BEING SOUGHT BY THIS NOTICE. THE PRIMARY PURPOSE OF THIS NOTICE IS TO ADVISE YOU OF SOME OF YOUR RIGHTS AND TO SEEK INFORMATION ABOUT THE PROPERTY AND THE OCCUPANTS.**

(SRA 001-003).

Mass. Gen. L. c. 186A, § 3 states in relevant part as follows:

> Section 3. Within 30 days of the foreclosure, the foreclosing owner shall post in a prominent location in the building in which the rental housing unit is located a written notice stating the names, addresses, telephone numbers and telephone contact information of the foreclosing owner, the building manager or other representative of the foreclosing owner responsible for the management of such building and

stating the address to which rent and use and occupancy charges shall be sent. This requirement shall be satisfied if the foreclosing owner or someone acting on his behalf has: (i) posted in a prominent location in the building; (ii) mailed by first class mail to each unit; (iii) and slid under the door of each unit in the building a document stating the names, addresses, and telephone contact information of the foreclosing owner, the building manager or other representative of the foreclosing owner responsible for the management of such building and stating the address to which rent and use and occupancy charges shall be sent.

See *Mass. Gen. L. c. 186A, § 3.*

The second piece of correspondence sent from Dolan Connly, objectionable to Jones, was the March 29, 2019 Notice to Quit. (SRA 020-022). Jones admits receiving the Notice to Quit on or about March 29, 2019 but disputes that it was served by constable. (Amend Compl. ¶ 151). After expiration of the Notice to Quit, on April 4, 2019 a summary process summons and complaint was prepared and then later served upon Jones. (SRA 023-024). Copies of the summary process summons and complaint and the Notice to Quit are attached to plaintiff's complaint. (Amend Compl. Exhibit 14). The notice to quit and the summary process summons and complaint were obviously necessary legal requirements to commence a post foreclosure eviction action in Massachusetts. And there is nothing alleged about the tone, content or substance of the correspondence that move it outside of the statutorily required notice after a foreclosure sale.

After a foreclosure sale, a former owner is a tenant at sufferance. Summary process is the necessary procedure to regain possession of premises wrongfully

withheld by holdover mortgagor.  See *Attorney General v. Dime Savings Bank of New York, FSB*, 413 Mass. 284, 285 (1992).  But while at common law a tenant at sufferance was not entitled to any particular notice, it is now recognized that even a tenant at sufferance following a foreclosure, is "entitled to some form of notice of the intent to secure possession of the premises prior to the commencement of a summary process action to allow [the tenant] enough time to vacate." *Georgia Driz, LLC v. Spenlinhauer*, 2017 Mass. App. Div. 120, 122. Accord *Homer Apartments, LP v. Postoronka*, 2013 Mass. App. Div. 6, 7. Cf. *Gabriel*, 81 Mass. App. Ct. at 573 ("a person who is entitled to assert defenses under G. L. c. 239, § 8A, does not lose that entitlement by later becoming a tenant at sufferance"). As a practical matter, it would be futile to expect a defendant to vacate his or her foreclosed home without providing notice to do so. See *Poutahidis v. Clingan*, 2001 Mass. App. Div. 217, 218-219 ("The occupant is, however, entitled to a reasonable period to remove himself or herself from the premises").  The Notice to Quit in this matter that was addressed to and sent to Mr. Jones, was the statutorily required reasonable notice to the former mortgagor.

The Notice to Quit and the summary process summons and complaint were required steps in the eviction process and not sent to seek funds or collect on any particular alleged debt.

### C. **The District Court correctly applied the statute of limitations and *Obduskey v. McCarthy & Holthus, LLP* decision to these facts.**

Jones spends very little energy or effort to address the district court's most important determination that the statute of limitations had run prior to his complaint being filed on May 9, 2019 except to state that "…the date any FDCPA claim must be based on violations that occurred no earlier than May 29, 2018 not May 9, 2018." (Appellant's Brief, Page 16, No. 22). His passing comment seems flawed as it would appear it is a matter of well accepted law, that the filing of an amended complaint "relates back" to the date of the filing of the original complaint, thereby making the operative date of the filing of the complaint May 9, 2019 (and not May 29, 2019). See P*essotti v. Eagle Mfg. Co.*, 946 F.2d 974, 975 (1st Cir. 1991).(Under the doctrine of relation back, an amended complaint can be treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint."). Relation back occurs when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." *Fed. R. Civ. P. 15(c)(1)(B).* In this instance, it is beyond question that Jones' amended complaint and his original complaint involve the same or similar claims and arose out of the same transaction.

But even using Jones' tortured application of the doctrine, he would still be barred by the applicable one (1) year statute of limitations where the first letter from

Dolan Connly[2] was sent on April 24, 2018.  See *15 U.S.C. § 1692k(d)* and *Rotkiske v. Klemm*, -- S. Ct. --, 2019 (WL 6703563 (Dec. 10, 2019) (holding that the FDCPA statute of limitations starts running on the date of the violation, not the date of discovery).  Jones was actually aware of the letter from Dolan Connly (although it was not addressed to him) because he [Jones] sent a letter on April 26, 2018 in response and alleged various violations.    (SRA 005-016).    Dolan Connly immediately responded to Jones' letter and requested further information but Jones never responded.  Therefore, it seems that even the most generous reading of the plaintiff's complaint would preclude any action under FDCPA for alleged violations that occurred prior to one year of the complaint filing date (using either date of May 9, 2019 or May 29, 2019).  For this reason, any claim against Dolan Connly is time barred.  Jones' allegations were peculiar and Dolan Connly, P.C. responded to Mr. Jones on May 2, 2018 and asked for further information but received no response. (SRA 017-019).

It oddly seems Jones' current argument, as it pertains to Dolan Connly, is that the mere attempt to evict (or any statement sent in connection with a contemplated eviction), is by itself actionable if it follows an alleged defective foreclosure.  Jones has never had either foreclosure sale judicially determined to be invalid.  In fact, the district court's decision starts from the premise that the sale was valid before it even

---

[2] This letter from Dolan Connly, P.C. was not addressed to Jones but was addressed to the Premises occupied by Jones.

analyzes the relevant FDCPA claim as to each defendant. Moreover, upon information and belief, there is not a single reported decision that has ever found liability for post-foreclosure eviction counsel in such a situation (of merely seeking possession).

Dolan Connly was retained to commence an eviction proceeding after the completed foreclosure sale on April 9, 2018. To the extent that Jones attempts to contort the mandatory notice to quit and summary process summons and complaint requirements, as new or separate violations, this argument should be summarily rejected.

Jones has alleged that Dolan Connly only sent him three (3)[3] separate notices but that they were all related to the post-foreclosure eviction. None of them alleged a debt or sought to collect a debt. Even if the notice to quit and the summary process summons and complaint were sent within the one (1) year of his filing of the Jones's complaint, it is not appropriate to treat either of these as a new violation when the communications concern an old claim. See *Everton v. HSBC Bank USA, N.A.*, No. 18-10264-FDS 2018 WL 5084838, at *3 (D. Mass. Oct. 17, 2018) (repeated mortgage statements were not new claims or separate violations). The eviction follows and is predicated, on the foreclosure. It is effectively an extension of that

---

[3] The Mass. Gen. L. c. 186A Notice was not addressed to Jones but mailed to the premises. The Notice to Quit was addressed and mailed to Jones. And the Summary Process Summons and complaint was addressed and mailed to Jones. Jones never discloses or has any objection to the response letter from Dolan Connly, P.C. to Jones on May 2, 2018. See SRA 017-019.

same process.  In many instances, an eviction is not necessary when the mortgagor voluntarily vacates the premises after legal title has been lost.  The foreclosure, unless otherwise determined, should be presumed to be valid and the mere initiation of an action for possession (without some particular wrongdoing) following a foreclosure is not an FDCPA violation.

Even putting aside the statute of limitations argument, the sufficiency of Jones's FDCPA claim in this case against Dolan Connly turns on whether he [Jones] plausibly pled that Dolan Connly (1) was a debt collector, (2) who took an action in connection with the collection of a debt, and (3) the action violated the substantive proscriptions in the applicable provisions.   The district court found that Jones' allegations failed to satisfy at least the first two (2) elements of the analysis.  I would submit this Court can confidently conclude that Jones failed on all three elements.

Here, Jones summarily alleges miscellaneous, yet unspecified violations of the FDCPA.  Absent facts pleaded to allow a reasonable inference that Dolan Connly was a debt collector, who took an action in connection with the collection of a debt, and that the action itself violated the applicable provision, it seems appropriate to conclude, Dolan Connly did not.  The burden is on Jones and he failed to make those allegations.  In light of Jones' failure, dismissal of his FDCPA claim was appropriate and proper.

In *Obduskey v. McCarthy & Holthus*, LLP, 139 S.Ct. 1029 (2019), the Court

ruled that those engaged in non-judicial foreclosures were "outside the scope of the primary 'debt collector' definition…. *Id*. In arriving at this conclusion, the Court thoroughly analyzes what the particular law firm did and the context in which it did it. The Court's explanation of the primary and limited-purpose definitions were helpful to ascertain the congressional intent. The Court notes "the limited-purpose definition poses a serious, indeed insurmountable, obstacle to subjecting McCarthy to the main coverage of the Act." *Id*. at 1037. Because language used is given its plain and ordinary meaning and superfluous wording and surplusage are expected to not be present, Court concluded "…we think Congress may well have chosen to treat security-interest enforcement differently from ordinary debt collection in order to avoid conflicts with state nonjudicial foreclosure schemes. *Id*. at 1037. After providing three explanatory rationales, the Court concludes that the "…considerations convince us, that but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Id*. at 1038. It does not seem as if it could have stated it any clearer. It would therefore logically follow, that the same analysis would be used when examining the actions of the post-foreclosure eviction counsel. Stated another way, this Court should confirm that those who only engage in the action of a post foreclosure eviction proceeding, are not debt collectors within the meaning of the Act.

The Court of course entertains that "…it is at least plausible that 'threatening' to foreclose on a consumer's home without having legal entitlement to do so is the kind of "nonjudicial action' without 'present right to possession" prohibited by that section. §1692f(6)(A)." *Id*. at 1038. Jones attempts to latch onto this fictitious hypothetical example, and adopt it as his own. But nothing of this sort occurred in this action. However, the history of Mr. Jones' challenging the efforts of various parties attempting to enforce the security instrument is well documented and dates back to at least 2009 when he commenced his first action in the Norfolk Superior Court. His arguments vary and change frequently. (Add. 011-031). And the *Obduskey* Court predictably stated they need not decide what other potential conduct precisely runs afoul of the statute. One could surmise that the Court would review each matter on a case by case basis. What must be clear however, is that so long as the law firm is only doing that which is required by applicable law, it cannot be found liable for violating the FDCPA.

The Court was sensitive to the effect on the homeowner but reiterated that a law firm whose only actions are taking necessary steps in a state regulated procedure, is not going to be held liable. The Court stated: "We do not doubt the gravity of a letter informing a homeowner that she may lose her home unless she pays her outstanding debts. But here we assume that the notices sent by McCarthy were antecedent steps required under state law to enforce a security interest." *Id*. at 1039.

Similarly here, the only actions taken by Dolan Connly in this matter, were steps required by state law.  Jones has not alleged otherwise.  Nor has he alleged anything specific to the content of the letters themselves.

In closing, Jones, has admitted being in default of payments since 2005, has admitted to a first foreclosure sale in 2008[4], admitted to a second foreclosure 2018 and admitted to remaining in possession of the home at 572 Park Street, Stoughton, Massachusetts (a home he acknowledges he does not own) for well over a decade. And he has admitted that Dolan Connly commenced an eviction action against him. And an eviction action remains pending in the Stoughton District Court.  These core admissions may be clouded by Jones' numerous other vague and unsubstantiated allegations and the plethora of additional conclusory statements, but Jones has failed to sufficiently articulate any action or statement of Dolan Connly, P.C. (or any of its employees) that could be construed as a violation of the Fair Debt Collections Practices Act.

## **CONCLUSION**

Based on the foregoing reasons and authorities, the district court properly entered judgment of dismissal in Defendant-Appellees, Dolan Connly, P.C. et al.'s

---

[4] The first sale took place on December 3, 2007.  And the foreclosure sale was never specifically determined to be invalid. In fact, Jones' attempts to attack the validity of the first foreclosure on various grounds failed in Norfolk Superior Court and the sale was then upheld by the Massachusetts Appeals Court and in separate action in the Federal District Court.  The election to reconduct the foreclosure sale after the 2007 sale likely came as a business decision on behalf of the mortgagee as a result of the seminal case *U.S. Bank Nat'l Ass'n v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40 (2011).

favor. The district court's decision should therefore be affirmed.

Respectfully Submitted,

The Defendants,
DOLAN CONNLY, P.C., JAMES W.
DOLAN, BARBARA D. CONNLY,
KATHLEEN. ALLEN, DAVID A.
MARSOCCI, and GREGORY A.
CONNLY,

By their Attorney,

/s/ David A. Marsocci
David A. Marsocci, Esq.
Dolan Connly, P.C.
Bar Number 1081753
50 Redfield Street, Suite 202
Boston, MA 02122
(617) 265-3100 PHONE
(617) 265-3101 FAX
dmarsocci@dolanconnly.com

Dated:  June 18, 2020

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,898 words, excluding the parts of the  brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14 pt Times New Roman.

/s/ David A. Marsocci

David A. Marsocci, Esq.
Bar Number 1081753

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel certifies that on June 22, 2020, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for the

First Circuit by using the appellate CM/ECF system and paper copies will be sent to

those indicated as non-registered participants, if any, on June 22, 2020.

Paul M. Jones
572 Park St
Stoughton, MA 02072

/s/ David A. Marsocci

_____

David A. Marsocci, Bar Number 1081753

ADDENDUM

*Jones v. Dolan Connly, P.C., et. al.,*
United States District Court, District of Massachusetts
Civil Docket No. 1:19-cv-11076-FDS...... .......................................... Add. 001-010


*Jones v. Bank of New York, et. al.,*
United States District Court, District of Massachusetts
Civil Docket No. 1:12-cv-11503-RWZ...... ........................................ Add. 011-026


*Jones v. Bank of New York, et. al.,*
Mass. App. Ct. 2012-P-1957...... ........................................................ Add. 027-031

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAUL JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DOLAN CONNLY, P.C.; JAMES W. DOLAN; | ) |
| BARBARA D. CONNLY; KATHLEEN M. | ) |
| ALLEN; DAVID A. MARSOCCI; BANK OF | ) |
| NEW YORK MELLON; GREGORY A. | ) |
| CONNLY; ORLANS, P.C.; LINDA ORLANS; | ) |
| ALISON ORLANS; JANE DOE; | ) |
| JOHN DOE; and SELECT PORTFOLIO | ) |
| SERVICING, INC., | ) |
| | ) |
| Defendants. | ) |

Civil Action No.
19-11076-FDS

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS UNDER 12(b)(6) AND FOR FAILURE TO STATE A CLAIM

SAYLOR, J.

   This action arises out of a mortgage foreclosure.  Plaintiff Paul Jones, proceeding *pro se*, has brought this action against defendants Dolan Connly, P.C.; Orlans, P.C.; Bank of New York Mellon; Select Portfolio Servicing, Inc.; and various attorneys and employees of those firms, alleging unfair and deceptive debt collection practices.  The amended complaint asserts five claims, alleging violations of (1) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (2) Mass. Gen. Laws ch. 244, § 15A; (3) Mass. Gen. Laws ch. 93A; (4) Mass. Gen. Laws ch. 244, §§ 35B and 35C; and (5) Massachusetts debt-collection regulations, 940 CMR 7.00.

   Defendants have filed three separate motions to dismiss the complaint for failure to state a claim upon which relief can be granted.  Jones has filed an opposition to only one of the three

motions.

For the reasons set out below, the motions will be granted as to Count 1, which is the only federal claim. The Court will decline to exercise supplemental jurisdiction over the remaining state law claims, and the case will therefore be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

## I.    Background

Unless otherwise noted, the following facts are drawn from the amended complaint and accompanying exhibits.

### A.    Parties

Paul Jones is a resident of Stoughton, Massachusetts. He was the homeowner and mortgagor in the underlying foreclosure and eviction matters.

Dolan Connly, P.C. is a law firm, organized as a professional corporation, located in Boston, Massachusetts. James Dolan, Barbara Connly, Kathleen Allen, David Marsocci, and Gregory Connly are attorneys at Dolan Connly.

Bank of New York Mellon ("BNY") is a Delaware corporation with a principal place of business in New York. It was the trustee and foreclosing mortgagee of the mortgage at issue.

Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation with a principal place of business in Utah. It was the servicer of the mortgage.

Orlans P.C. is a law firm, organized as a professional corporation, located in Troy, Michigan. Linda Orlans and Alison Orlans are residents of Michigan and attorneys at Orlans P.C.

### B.    Factual Background

In 2004, Paul Jones executed a mortgage on property at 572 Park Street in Stoughton,

2

Massachusetts. (Amend. Compl. ¶ 62). In 2005, Jones defaulted on the loan. (*Id.* ¶ 63). It appears that he occupied the property and did not make payments on the loan for the next thirteen years.

At some point, the loan was reassigned to BNY. (*Id.*). BNY completed a foreclosure sale of the property in 2007, but apparently the foreclosure was subsequently rescinded. (*Id.* Ex. 6).

In July 2015, Jones received notice that SPS had become the servicer of his mortgage on behalf of BNY. (*Id.* ¶ 75). Over the next several years, he received approximately 33 mortgage statements. (*Id.* ¶ 76). In December 2017, Jones received a mortgage statement from SPS stating that his account had been accelerated and all outstanding amounts were due at that time. (*Id.* ¶ 84). He claims that this acceleration was contrary to his mortgage agreement. (*Id.*).

Beginning in March 2018, Jones received several notices for a new foreclosure sale. (*Id.* ¶ 125). The new foreclosure was handled by attorneys at Orlans, P.C. (*Id.*). On April 9, 2018, BNY foreclosed on the property. (*Id.* ¶ 136).

Eviction proceedings then began against Jones. (*Id.* ¶ 150). The auction and eviction process included the mailing of several notices to him, including a notice to quit and a notice of the eviction proceedings. (*Id.* ¶ 151; Ex. 16 p. 2-7).

Jones filed the complaint in this action on May 9, 2019, and an amended complaint on May 29, 2019.

## II.    Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.

3

1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its

face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations and footnote

omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as

alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief."  *Ruiz Rivera v.*

*Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations in original) (quoting *Clark v.*

*Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).  In making that

assessment, the court may consider documents attached to the complaint as well as the complaint

itself.  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

Although uncommon, a plaintiff "may plead [herself] out of court by attaching documents to the

complaint that indicate that he or she is not entitled to judgment."  *Matter of Wade*, 969 F.2d

241, 249 (7th Cir. 1992); *see Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at \*10

(D. Mass. Mar. 22, 2016) ("When a document attached to a complaint contradicts an allegation

in the complaint, the document trumps the allegation.").

  A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings

must be construed so as to do justice.").  However, while *pro se* complaints are accorded an

"extra degree of solicitude", *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must

4

Add. 004

"set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1998).

## III.    <u>Analysis</u>

The Dolan Connly defendants, BNY and SPS, and the Orlans defendants have separately moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because the only federal claim is time-barred, and because the Court will decline to exercise supplemental jurisdiction over the remaining claims, it will not address all of the issues raised by defendants.

### A.    <u>Claim under FDCPA</u>

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To effectuate that goal, Congress included a provision for civil liability to provide recourse for those harmed by violations of the statute. 15 U.S.C. § 1692k(a). A litigant can bring such an action "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, -- S. Ct. --, 2019 WL 6703563 (Dec. 10, 2019) (holding that the FDCPA statute of limitations, absent application of any equitable doctrine, starts running on date of the violation, not discovery).

Plaintiff filed this suit on May 9, 2019. Accordingly, any FDCPA claim must be based on violations that occurred no earlier than May 9, 2018. But even the most generous reading of the complaint forecloses that possibility. Although the details are less than clear, the complaint and associated exhibits chronicle a long and troubled mortgage relationship tracing back to at least 2005. (Amend. Compl. ¶¶ 64-69). For reasons not made clear, the foreclosure in 2007 did not end the matter—the foreclosure was rescinded, the mortgage remained outstanding, and

5

plaintiff retained occupancy of the property. In 2015, plaintiff was informed that SPS was now his mortgage servicer. SPS sent letters from 2015 until April 2018 advising him as to the amounts he owed under his mortgage. (*Id.* ¶ 76). A new foreclosure took place on April 9, 2018. (*Id.* ¶ 90).

Again, any claim under the FDCPA arising out of any action occurring prior to May 9, 2018, is time-barred.[1] Nonetheless, plaintiff contends that numerous "discrete" violations of the FDCPA have occurred since May 9, 2018. (Opp. p. 6-7). However, a detailed reading of the complaint, his opposition to the motion to dismiss, and nearly 200 pages of exhibits reveals only two potentially relevant events that occurred during that period: the eviction proceedings against him and a single post-foreclosure letter that he received from Orlans.[2]

First, plaintiff argues that the eviction proceedings—which were not commenced until after the foreclosure occurred—involved FDCPA violations. "A private plaintiff seeking to hold a person liable under [the FDCPA] must establish that: (1) the defendant is a 'debt collector;' (2) who took an action 'in connection with the collection of a[ ] debt;' and (3) the action violated the substantive proscriptions in those provisions." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.,* 109 F. Supp. 3d 251, 257-8 (D.D.C. 2015) (citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). The allegations of the complaint fail to satisfy at least the first two of those elements.

First, the complaint identifies no relevant "debt collector" within the meaning of the

---

[1] According to documents attached to the complaint, plaintiff was actually aware of his potential FDCPA claim before May 9, 2018. On April 10, 2018, he sent a letter to Orlans P.C. (copying BNY, SPS, the Massachusetts Attorney General's Office, and the CFPB) stating that they had "violated the Fair Debt Collection Practices Act." (*Id.* Ex. 12 p. 2-4). On April 26, 2018, he sent a similar notice to Dolan Connly P.C., again alleging FDCPA violations. (*Id.* Ex. 15 p. 2-5).

[2] The amended complaint also points to a letter that highlighted plaintiff's potential rights under the Service Members Civil Relief Act. (Amend. Compl. ¶ 129). The complaint alleges that the letter was send on August 31, 2018, but the associated exhibit shows that the letter was actually sent on August 31, 2017. (*Id.* Ex. 11).

statute. In *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1033 (2019), the Supreme

Court held that a law firm hired solely to carry out a non-judicial foreclosure was not acting as a

"debt collector" under the FDCPA. Here, plaintiff identified only the Dolan Connly defendants

as possible FDCPA violators in the eviction proceeding. But if foreclosure counsel is not a "debt

collector" under the FDCPA, certainly post-foreclosure eviction counsel is not. At a minimum,

the act of eviction is even further removed from the collection of a debt than the act of

foreclosure. Accordingly, there is no valid claim under the FDCPA arising out of the eviction

proceedings, because there was no "debt collector" to which the act applied.

Furthermore, the eviction proceeding was not done in connection with an act of "debt

collection." "In assessing whether [eviction] filings were submitted in connection with debt

collection, the Court must determine (1) if there were 'debts' and (2) if the eviction complaints

were filed in order to collect on those debts." *Lipscomb v. The Raddatz Law Firm, P.L.L.C.*, 109

F. Supp. 3d 251, 257-8 (D.D.C. 2015) (citing *Hughey v. United States*, 495 U.S. 411, 415

(1990)). In *Lipscomb*, the court found that the eviction proceedings were initiated in connection

with the collection of a debt because they also "sought a money judgment for amounts allegedly

owed." *Id.*; *see also Romea v. Heiberger & Associates*, 163 F.3d 111, 116 (2d Cir. 1998)

(finding eviction notice to fall under FDCPA because defendant's "aim in sending the letter was

at least in part to induce Romea to pay the back rent she allegedly owed"); *O'Connor v.

Nantucket Bank*, 992 F. Supp. 2d 24, 33 (D. Mass. 2014) (noting that "courts' decisions regarding

the applicability of the FDCPA to eviction actions [are] fact-sensitive" but that the "existing

cases" that "an eviction action can implicate the FDCPA, particularly where the eviction

action includes some demand for payment tied to the property at issue"). That situation is not

present here. Neither the complaint nor the exhibits contain any evidence suggesting that

7

plaintiff's eviction involved any demand for payment. That fact is unremarkable, because the eviction occurred *after* the foreclosure: Massachusetts, as with most states permitting non-judicial foreclosure, only allows a post-foreclosure deficiency debt if the mortgagee files a separate action for one. Mass. Gen. Laws ch. 244 § 17. There is no allegation of the filing of a deficiency action here. In short, because the eviction proceeding at issue lacked an associated effort to obtain payment, it was not undertaken in connection with a debt collection.

The post-foreclosure letter from Orlans likewise does not constitute a debt-collection attempt. In *Brown v. Bank of America, Nat., Ass'n*, 67 F. Supp. 3d 508, 518-19 (D. Mass. 2014), a *pro se* plaintiff asserted FDCPA claims against the parties that foreclosed on his property. The court found that the FDCPA claims were time-barred because no debt-collecting activity had occurred within the limitations period. *Id.* In so holding, the court noted that defendant had "sent a mortgage discharge notice [within the limitations period]. But [plaintiff did] not explain how this notice constituted a violation of the FDCPA. To the contrary, [the notice] seem[ed] more like a release of debt than a collection." *Id.*

The post-foreclosure letter here presents a similar circumstance. Jones received a single foreclosure-related letter sent by Orlans on September 19, 2018, setting forth his total debt and the auction sale price of the subject property. (Compl. Ex. 8, p. 4-5).[3] The letter informed him that there were no surplus funds from the foreclosure sale to which he is entitled. (*Id.*). As in *Brown*, that letter cannot reasonably be construed as an effort to collect a debt.[4]

Accordingly, because all of the debt-collecting activities occurred outside of the one-year

---

[3] The letter is also included in Exhibit 11.

[4] The Orlans letter also suffers from the deficiency of not being sent by a "debt collector." Counsel "who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]." *Obduskey*, 139 S. Ct. at 1039.

8

limitations period, the FDCPA claim is untimely and will be dismissed against all defendants.

**B.    Supplemental Jurisdiction**

In light of the dismissal of Count 1, the Court will decline to exercise supplemental jurisdiction over the remaining claims. A district court's original jurisdiction extends, among other things, to claims that arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If an action includes both federal-law claims and state-law claims, then the district court may exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367. However, where a complaint fails to state a viable claim under federal law and jurisdiction over the remaining claims is based solely on supplemental jurisdiction, a "district court has discretion to decline to exercise supplemental jurisdiction." *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 431 n.10 (1st Cir. 2010); 28 U.S.C. § 1367(c). In so doing, the court "must take into account considerations of judicial economy, convenience, fairness to the litigants, and comity." *Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 48 (1st Cir. 2012); *see Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (noting that "it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts").

Here, the only federal claim has been dismissed. All that remains are four state-law claims. Apart from the complaint and motions to dismiss, no substantial litigation has occurred. Under the circumstances, the Court will to decline to exercise supplemental jurisdiction over the remaining state law-claims.

**IV.    Conclusion**

For the foregoing reasons, defendants' motions to dismiss are GRANTED as to Count 1.

9

The Court declines to exercise supplemental jurisdiction over the remaining claims, which are accordingly DISMISSED without prejudice.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: December 16, 2019

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11503-RWZ

PAUL M. JONES

v.

BANK OF NEW YORK, et al.

<u>MEMORANDUM OF DECISION</u>

July 12, 2013

ZOBEL, D.J.

This case arises out of the allegedly improper assignment and foreclosure of a home mortgage. Defendants – entities and individuals involved in the assignment, servicing, and foreclosure of the mortgage and resulting litigation – move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds of claim and issue preclusion, various procedural deficiencies, failure to state a claim upon which relief can be granted, and lack of federal jurisdiction.

**I. Background and Court Proceedings**

On June 22, 2004, plaintiff Paul M. Jones ("Jones") executed a promissory note payable to defendant Optima Mortgage Loan Corporation ("Optima") in the amount of $274,550.00. To secure the note, Jones gave a mortgage on his residence located at 572 Park Street in Stoughton, Massachusetts (the "Property") to defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Optima. The mortgage was recorded in the Norfolk County Registry of Deeds on March 29, 2005.

MERS subsequently assigned the mortgage to defendant Bank of New York (now BNY Mellon) ("BNY Mellon") as Trustee for the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series 2004-7.  The body of the assignment states only that it was signed in 2006, without a specified date, but the notarization of the document indicates that defendant Amanda Farrar signed the assignment as an Assistant Vice President for MERS on November 20, 2006.

At some point Jones fell behind on his loan payments, and BNY Mellon filed a complaint to foreclose in the Massachusetts Land Court on November 6, 2006.  BNY Mellon gave Jones written notice on January 12, 2007, of its intention to foreclose on the mortgage and sell the Property.  Jones filed for bankruptcy protection to stop the foreclosure sale, but the Bankruptcy Court granted BNY Mellon relief from the stay and leave to foreclose.  The foreclosure sale took place on December 3, 2007, and BNY Mellon purchased the Property.

A second assignment of the mortgage from MERS to BNY Mellon, dated October 10, 2006, was signed by defendant Tiffany Skaife as Assistant Secretary for MERS and notarized on January 25, 2008, by defendant Sandra Robinson.  This second assignment was filed at the Norfolk County Registry of Deeds on February 25, 2008.

A third assignment of the mortgage, dated October 21, 2008, was filed at the Norfolk Registry of Deeds on November 21, 2008.  It was labeled "Confirmatory Assignment of Mortgage" and stated that it confirmed and amended the second assignment to clarify that the "correct effective date memorializing the assignment of said Note and Mortgage is October 10, 2006."  This third assignment was signed by

2

defendant Mark Bishop as First Vice President of MERS and witnessed by defendant

Melissa Flanagan.

On March 20, 2009, Jones, represented by counsel, filed suit against BNY

Mellon and defendant Ablitt Law Offices, P.C. ("Ablitt")[1] in Norfolk Superior Court

challenging the validity of the foreclosure sale of the Property.  In that action, Jones

alleged that BNY Mellon did not have a valid assignment of his mortgage and therefore

lacked the authority to foreclose.  He also claimed that Ablitt, which represented BNY

Mellon in Land Court and subsequent proceedings, violated a duty of good faith to him

by making false statements to the Land Court on BNY Mellon's behalf and failing to

comply with applicable law in instituting foreclosure proceedings.  On September 28,

2009, the superior court allowed Ablitt's motion to dismiss for failure to state a claim for

relief, holding that Jones failed to show Ablitt owed him a legal duty.

Undeterred by the dismissal, Jones filed this federal action pro se on August 10,

2012, against Ablitt and one of its attorneys alleging violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and unfair or deceptive trade

practices under Massachusetts law in connection with their representation of BNY

Mellon in foreclosure proceedings.  Jones amended his complaint two months later on

October 10, 2012, to append a bevy of additional defendants and claims under both

federal and state law.

In the meantime, on October 22, 2012, the superior court granted BNY Mellon's

---

[1] Ablitt later changed its name to "Ablitt Scofield, P.C." but is listed as "Ablitt Law Office" in Jones's amended complaint.

3

motion for summary judgment in the state case, finding that the 2006 assignment of Jones's mortgage from MERS to BNY Mellon was valid as a matter of law.[2]    All defendants, save Optima[3], thereafter filed motions to dismiss in this court (Docket ## 11, 13, 25, 43, and 69).

Jones continues to occupy the Property.

**II. Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plausibility "is not akin to a probability requirement, but [requires] more than a sheer possibility ...." Id.  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.   The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice, In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003), but the court may also consider other documents the authenticity of which are not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint, Watterson v. Page, 987 F. 2d 1, 3-4 (1st Cir. 1993).

**III. Discussion**

Comprised of 388 paragraphs spanning 64 pages, the sprawling and at times

---

[2] Jones's appeal of the superior court decision granting summary judgment to BNY Mellon is currently pending.  Jones chose not to appeal the superior court's dismissal of his claims against Ablitt.

[3] A default was entered against Optima pursuant to Fed. R. Civ. P. 55(a) on January 14, 2013.

4

disjointed amended complaint accuses over twenty separate defendants – BNY Mellon

as Trustee for the Certificate Holders, CWABS, Inc. Asset-Backed Certificates, Series

2004-7, CWABS, Inc. ("CWABS")[4], Bank of America, N.A. ("BANA")[5], MERS, Optima,

law firms Goodwin Procter LLP ("Goodwin")[5] and Ablitt, and various individuals

affiliated with them[6] – of federal and state law violations in ten counts: (1) violation of

the FDCPA; (2) violation of Mass. Gen. Laws c. 93A and c. 185 § 67; (3) fraud; (4)

intentional infliction of emotional distress; (5) slander of title; (6) civil conspiracy; (7)

violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 et

seq.; (8) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.; (9)

willful noncompliance with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et

seq.; and (10) abuse of legal process.

    At the heart of Jones's claims is the contention that BNY Mellon did not have a

---

[4] It is unclear from the caption and body of the complaint whether CWABS, Inc. ("CWABS"), was intended to be named independently as a defendant or grouped together with BNY Mellon as Trustee. Jones later caused a summons to be served upon CWABS and communicated that CWABS was to be named as a separate defendant.

[5] BANA, the servicer for Jones's mortgage, is listed as "Bank of America (Formally [sic] Countrywide Home Loans, Inc.)" in the caption of the amended complaint.

[5] Goodwin defended BNY Mellon against Jones's lawsuit in Norfolk Superior Court.

[6] Due to discrepancies in the amended complaint, there is some confusion regarding which individuals are defendants in this case. The individuals identified as defendants in the caption are: Ann Marie Cassano, Leon Daniels, Paul Connolly, Stephanie Whited, Richard A. Oetheimer, Erin M. Michael, Matthew J. Thaler, Waltor Porr, Matthew R. Braucher, Tiffany Skaife, Melissa Flanagan, Sandra J. Robinson, Amanda Farrar, and Mark Bishop.
    M. Kelly Mitchie is not named as a defendant in the caption, but is listed as a defendant in the "Parties" section of the complaint. Since Mitchie has filed a motion to dismiss, the court will treat him or her as a defendant for the purposes of the present ruling.
    Two former employees of Ablitt, Deirdre Cavanaugh and Rachel D. Costa, are listed neither in the caption nor the "Parties" section, yet are referred to as "defendants" in other parts of the amended complaint. As Cavanaugh and Costa have neither been served with the complaint nor entered an appearance, they will not be considered parties to this action.

valid assignment of his mortgage and thus lacked the legal authority to foreclose on the Property.  Jones alleges that the assignments were invalid due to numerous reasons, including untimeliness, forgery, the use of robo-signers, and lack of compliance with the pooling and servicing agreement that governs the CWABS Trust.  He accuses defendants of participating, to varying degrees, in the activities and events surrounding the allegedly fraudulent foreclosure.  He also faults defendants for their response, or lack thereof, to recent correspondence from him regarding the validity of the mortgage assignment and foreclosure.  Because this court's jurisdiction depends on the existence of viable federal claims, 28 U.S.C. § 1331, I address the federal claims first.[7]

A.    **FDCPA Violations (Count I) Against BANA, BNY Mellon, MERS, Ablitt, and Goodwin**

Jones asserts that defendants BANA, BNY Mellon, MERS, Ablitt, and Goodwin, and their employees and agents, unlawfully attempted to collect and enforce his "consumer mortgage debt" by foreclosure when they knew or should have known that BNY Mellon lacked a valid assignment and in so doing violated several provisions of the FDCPA.  He also alleges, without much detail, that defendants failed to comply with certain communication requirements in the statute.

To the extent that Jones complains of conduct by BNY Mellon and Ablitt in connection with the assignment and foreclosure, such arguments are subject to claim preclusion.  Massachusetts law governs the preclusive effect of a prior state court

---

[7] Though Jones purports to bring this action under diversity jurisdiction pursuant to 28 U.S.C. § 1332, he has failed to allege complete diversity of the parties and, in fact, indicates that several defendants are, like himself, citizens of Massachusetts.

6

judgment.  <u>Giragosian v. Ryan</u>, 549 F.3d 59, 63 (1st Cir. 2008).  Claim preclusion, also known as res judicata, prevents the relitigation of claims that a party "had the opportunity and incentive to fully litigate . . . in an earlier action."  <u>Id.</u>  There are three essential elements: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause[s] of action; and (3) a prior final judgment on the merits."  <u>McDonough v. City of Quincy</u>, 452 F.3d 8, 16 (1st Cir. 2006).  With respect to the second element, causes of actions are identical if they derive "from the same transaction or series of connected transactions," <u>id.</u>; "thus, claims not actually raised [in prior litigation] will be barred if they arise from the same common nucleus of facts as the claims that were litigated." <u>Kucharski v. Tribeca Lending Corp.</u>, 620 F. Supp. 2d 147, 150 (D. Mass. 2009).   Here, Jones, BNY Mellon, and Ablitt were all parties in the prior superior court case.  Both cases arise out of the same transaction and nucleus of facts (the foreclosure of the Property by BNY Mellon and its authority to do so); claims pertaining to defendants' conduct and rights vis-à-vis the foreclosure could have been raised and litigated in the original state case.  <u>See</u> <u>Kucharski</u>, 620 F. Supp. 2d at 151 (barring plaintiff's claims relating to defendant mortgagee's alleged lack of disclosures in loan transaction where she had previously litigated claims arising from the refinancing and foreclosure of her home).  Finally, the superior court's dismissal of the state case against Ablitt and grant of summary judgment to BNY Mellon were final judgments on the merits.

Similarly, Jones's FDCPA claims against BANA, BNY Mellon, MERS, Ablitt, and Goodwin that are predicated on the invalidity of the assignment and foreclosure are

7

barred by issue preclusion.  Issue preclusion, or collateral estoppel, prohibits

relitigation of any factual or legal issue that was decided in previous litigation and

applies where "(1) the issues raised in the two actions are the same; (2) the issue was

actually litigated in the earlier action; (3) the issue was determined by a valid and

binding final judgment; and (4) the determination of the issue was necessary to that

judgment." Manganella v. Evanston Ins. Co., 700 F.3d 585, 591 (1st Cir. 2012).  Count

I alleges that certain conduct by defendants was unlawful and deceptive precisely

because BNY Mellon did not have the right to foreclose on the property.  Yet the

superior court upheld the foreclosure in a valid and binding final judgment, finding that

"[p]laintiff's claim that the assignment of his Mortgage from MERS to BNY Mellon as

Trustee is invalid fails as a matter of law."  Jones v. Bank of New York, No. CV2009-

00471 (Mass. Super. October 19, 2012); Docket # 12, Ex. 4.  The validity of the

assignment and foreclosure of Jones's mortgage is thus a closed issue, and he cannot

relitigate it here.  Any claims that rest on alleged deficiencies in the assignment or

foreclosure process fail.

That said, not all of Jones's FDCPA claims are precluded by the prior state

judgment.  The FDCPA prohibits attempts to collect an otherwise valid debt using

improper methods, and Jones makes several allegations to that effect.  He charges

defendants with, inter alia, engaging in harassing, oppressive, or abusive conduct, 15

U.S.C. § 1692d; falsely representing the character, amount, or legal status of his debt,

id. § 1692e(2); communicating or threatening to communicate false credit information,

id. § 1692e(8); using false representation or deceptive means to collect debt or obtain

8

information, id. § 1692e(10); and using a name other than the true name of the debt
collector's business, id. § 1692e(14).  Jones also alleges that defendants failed to
disclose in written communications that they were debt collectors attempting to collect a
debt, 15 U.S.C. § 1692e(11), and that they failed to send him written notice about the
debt within five days after initial communication regarding its collection, id. § 1692(g).

Though not entirely clear from the amended complaint, the basis for these
claims appears to be defendants' response, or lack thereof, to correspondence sent by
Jones in the fall of 2012.  In August 2012, Jones wrote a letter to BNY Mellon
challenging the 2007 foreclosure sale of the Property on several grounds (including the
validity of the assignment) and requesting that it be set aside.  An employee of BNY
Mellon replied by email on August 30, 2012, indicating that BNY Mellon, as "a
Trustee[,] . . . do[es] not physically own the loan or the property" and "do[es] not have
any say in how the property is disposed, loan modifications, code violations, etc."
Compl. ¶ 25; see also Ex. 1.  These matters, she noted, are "the responsibility of the
Servicer," BANA, who is "the direct and only contact in regards to your request."  Id.
Jones took this response as a damning admission by BNY Mellon that it was never
validly assigned the mortgage and, armed with this "proof," sent additional letters to
BNY Mellon, Countrywide Home Loans (BANA's predecessor), Ablitt, and Goodwin.
Jones faults defendants for thereafter failing to "correct" their prior representations in
state and federal court regarding the assignment and ownership of the mortgage.  Even
under a generous reading, the amended complaint does not sufficiently explain how
such alleged inaction violates the cited sections of the FDCPA.  Insofar as he may be

9

complaining of other instances of wrongdoing, Jones offers very little, beyond

conclusory statements and recitations of statutory language, to make out his claims.

That is simply not enough.

Count I is dismissed.[8]

### B.    RESPA Violations (Count VII) Against BANA, BNY Mellon, and MERS

The only provision of RESPA specifically cited in the amended complaint is 12

U.S.C. § 2605(e), which mandates that "[i]f any servicer of a federally related mortgage

loan receives a qualified written request from the borrower . . . for information relating

to the servicing of such loan, the servicer shall provide a written response

acknowledging receipt of the correspondence within 20 days" and must make

appropriate corrections to the borrower's account or provide a written explanation or

clarification within 60 days. Id. at § 2605(e)(1)(A) and (2).  To make out a claim under §

2605(e), a plaintiff must allege sufficient facts to "show: (1) that the servicer failed to

comply with the statute's [qualified written request] rules; and (2) that the plaintiff

incurred 'actual damages' as a consequence of the servicer's failure." Okoye v. Bank

of New York Mellon, CIV. A. No. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass.

July 28, 2011) (quoting Anokhin v. BAC Home Loans Servicing, LLP, No. 2:10-cv-

00395-MCE-EFB, 2010 WL 5393972, at *3 (E.D. Cal. Dec. 22, 2010)).

BNY Mellon and MERS are not loan servicers and fall outside the reach of this

provision.  As for BANA, Jones alleges that it violated § 2605(e) by failing to properly

---

[8] Some defendants also invoke FDCPA's one-year statute of limitations.  Because Jones's claims are precluded on other grounds, it is not necessary to address those arguments here.

10

and timely respond to a qualified written request ("QWR") he sent on or about July 9, 2012.  BANA, through counsel, sent Jones a letter dated September 27, 2012, in which it addressed his requests and inquiries.  It appears BANA did not send acknowledgment of receipt of Jones's QWR within 20 days as required by § 2605(e)(1)(A), although the servicer did provide a written response to him within 60 days (excluding holidays and weekends) pursuant to § 2605(e)(2).  Nonetheless, Jones cannot recover on this count because he fails to plead any actual damages from BANA's failure to respond.  See, e.g., Williams v. Litton Loan Servicing, CA 10-11866-MLW, 2011 WL 3585528, at *4 (D. Mass. Aug. 15, 2011) ("Without such a showing [of pecuniary damages], a RESPA claims is not actionable.") (dismissing RESPA claim where complaint did not allege that defendant's failure to respond to QWR resulted in actual damages); Okoye, 2011 WL 3269686, at *17 (same) (listing cases).  Accordingly, the RESPA claim is dismissed.[9]

### C.     TILA Violations (Count VIII) Against BANA and BNY Mellon

The complaint appears to allege that BANA and BNY Mellon violated TILA in two ways: by failing to provide Jones with accurate material disclosures in the origination of his loan,[10] 15 U.S.C. § 1601 et seq., and by failing to comply with new creditor notice requirements, 15 U.S.C. § 1641(g).

---

[9] Elsewhere in the amended complaint, Jones refers broadly to violations of RESPA stemming from defendants' alleged failure to timely notify him of the mortgage assignment.  However, he neither identifies the RESPA provisions implicated nor provides any elaboration regarding how defendants violated them.

[10] For example, Jones refers to requirements "to fully inform home buyers of the pros and cons of adjustable rate mortgages" and "to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix."  Compl. ¶ 367.

11

To the extent Jones complains of TILA disclosure violations in connection with the origination of the mortgage, BANA and BNY Mellon argue that such claims cannot be asserted against them since they, as the servicer and subsequent assignee, respectively, played no role in that process and cannot be held liable for any possible violations by Optima.  The amended complaint neither identifies what required disclosures were not made nor addresses whether BANA and BNY Mellon are creditors within the meaning of the statute.  "While a servicer of a loan has the obligation to provide certain information to borrowers under the Act, 'liability for violations of TILA rests squarely and solely with creditors.'" Shaw v. BAC Home Loans Servicing, LP, CIV.A. 10-11021-DJC, 2013 WL 789195, at *7 (D. Mass. Mar. 1, 2013) (quoting Ording v. BAC Home Loans Servicing LP, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011)) (dismissing TILA claims where defendant was servicer and not a creditor).  Assignees may be held liable for the loan originator's failure to make disclosures required by TILA, but only if such violations are "apparent on the face of the disclosure statement" or the assignment was involuntary.  15 U.S.C. § 1641(a); Akar v. Fed. Nat. Mortgage Ass'n, 845 F. Supp. 2d 381, 393-94 (D. Mass. 2012). Jones does not allege facts showing that any violations of TILA were apparent on the face of the loan documents and does not claim that the assignment to BNY Mellon was involuntary.  The TILA disclosure claims against both BANA and BNY Mellon fail.

Jones fares no better under § 1641(g).  That provision, which requires a new owner or assignee of a debt to notify the borrower of the transfer, was added to the Act in 2009, see Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 §

12

404, 123 Stat. 1632, 1658, and does not apply retroactively to conduct occurring before its effective date of May 20, 2009. See, e.g., Bradford v. HSBC Mortg. Corp., 829 F. Supp. 2d 340, 353 (E.D. Va. 2011) ("Nothing in TILA indicates that this provision should be applied retroactively."); Eng v. Dimon, No. 11-3173 MMC, 2012 WL 2050367, at *1 (N.D. Cal. June 6, 2012); Connell v. CitiMortgage, Inc., CIV.A. 11-0443-WS-C, 2012 WL 5511087, at *1 (S.D. Ala. Nov. 13, 2012). Since BNY Mellon was assigned Jones's mortgage in 2006, years prior to the enactment of § 1641(g), it had no obligation to provide notice of the transfer to him.

Moreover, a civil action for a TILA violation must be brought within one year of the violation. 15 U.S.C. § 1640(e). The loan transaction took place in 2004, and the mortgage was assigned in 2006, but Jones did not bring this action until October 2012. Jones claims that the statute of limitations is tolled due to defendants' failure to provide the required disclosures and notices. He also asserts that it was "impossible" for him to prove his case until after he learned of a large fraud settlement between several major banks and state attorneys general in 2012 and after he had received the August 2012 email from BNY Mellon. But "the mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations," Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 906 (C.D. Ca. 2009), and Jones fails to show that he was "in some extraordinary way . . . prevented from asserting his rights," Corcoran v. Saxon Mortg. Servs., Inc., CIV.A. 09-11468-NMG, 2010 WL 2106179, at *3 (D. Mass. May 24, 2010) (citation omitted). See also Okoye, 2011 WL 3269686, at *15 ("Equitable tolling is inappropriate in this case because [plaintiffs] were aware – or

13

should have been aware – of the lack of disclosure within [ ] one year of closing.");

Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (rejecting plaintiff's

equitable tolling argument where "nothing prevented [her] from comparing the loan

contract, [defendant's] initial disclosures, and TILA's statutory and regulatory

requirements.").

Because Jones's TILA allegations do not state a claim for relief and are time-

barred, Count VIII is dismissed.

**D.    FCRA Violation (Count IX) Against BANA**

Jones accuses BANA of willfully violating the FCRA by obtaining his consumer

report without a permissible purpose, 15 U.S.C. § 1681b(f).  The amended complaint,

however, lacks "factual content that allows the court to draw the reasonable inference

that [BANA] is liable for the misconduct alleged," Iqbal, 556 U.S. at 678; Jones provides

no explanation, beyond a single conclusory allegation, of BANA's actions and how they

violated the FCRA.

Jones also claims that BANA falsely reported having foreclosed on the Property

and that it continues to report inaccurate information on his credit report despite the

fact that the information is in dispute, all presumably in violation of 15 U.S.C. § 1681s-

2.  As a furnisher of information to consumer reporting agencies, BANA has a duty to

provide accurate information, § 1681s-2(a), and a duty to undertake an investigation

upon receipt of notice of dispute from a consumer reporting agency, § 1681s-2(b).  See

also Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 11 (D. Mass. 2004).  But BANA correctly

notes that there is no private right of action under § 1681s-2(a), which is enforced

14

exclusively by governmental agencies and officials. Id. As for claims of negligent reporting under § 1681s-2(b), a private cause of action exists "only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed." Id. (citations omitted). Here, Jones "has not alleged that he contacted any credit reporting agency or that the agency, in turn, got in touch with [BANA]," thereby triggering its BANA's duty to investigate. Id. He therefore fails to state a claim under the FCRA, and Count IX is dismissed.

      E.    Remaining Claims

     As all the federal claims have been dismissed, I decline to retain supplemental jurisdiction over the remaining claims, which arise under Massachusetts statutory and common law.

## IV. Conclusion

     Defendants' motions to dismiss the amended complaint (Docket ## 11, 13, 25, 43, and 69) are ALLOWED with prejudice as to Counts 1, 7, 8 and 9, and without prejudice as to Counts 2, 3, 4, 5, 6 and 10.  Ablitt's motion for leave to file a supplemental memorandum of law (Docket # 76) in connection with its motion to dismiss is ALLOWED.

    _____July 12, 2013_____          _____/s/Rya W. Zobel_____

DATE

RYA W. ZOBEL
UNITED STATES DISTRICT JUDGE

NOTICE: Decisions issued by the Appeals Court pursuant to its rule 1:28 are primarily addressed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, rule 1:28 decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 1:28, issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.

COMMONWEALTH OF MASSACHUSETTSAPPEALS COURT

12-P-1957

PAUL M. JONES

vs.

BANK OF NEW YORK.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 1:28

Paul M. Jones appeals from the allowance of the Bank of New York Mellon's (BNY Mellon) motion for summary judgment in an action to invalidate the foreclosure of Jones's property.  See generally G. L. c. 244, § 14, and G. L. c. 183, § 21, as in effect prior to St. 2012, c. 194, § 81.  We affirm.

Background.  "The standard of review of a grant of summary judgment is whether viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass.R.Civ.P. 56(c), as amended 365 Mass.

_____

[1] Now known as Bank of New York Mellon, as trustee for the Certificate Holders, CWABS, Inc., Asset-backed Certificates Series 2004-7.

824 (1974); Caron v. Horace Mann Ins. Co., 466 Mass. 218, 221

(2013).[2]  In accordance with Superior Court Rule 9A(b)(5)(i) and

Mass.R.Civ.P. 56, as amended, 436 Mass. 1404 (2002), the

defendants served a statement of undisputed material facts on

Jones, which Jones did not dispute.  Accordingly, these facts are

"deemed to have been admitted."  Superior Court Rule

9A(b)(5)(ii).  Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 499,

n.16 (2010).  We summarize the undisputed facts.  Jones entered

into a mortgage agreement with Optima Mortgage Corporation

(Optima), securing a loan of $274,550 on June 22, 2004.  This

agreement nominated the Mortgage Electronic Registration Systems,

Inc. (MERS) as the mortgagee, and conveyed to MERS the mortgage

with a power of sale over the property.  On the same day,

pursuant to a 2002 loan purchase agreement, Optima executed an

allonge[3] to the note, granting its interest in the mortgage note

to Countrywide Document Custody Services, which endorsed the note

to Countrywide Home Loans, Inc. (Countrywide).  Countrywide then

entered into a pooling and servicing agreement with a number of

other banks, selling a number of mortgages, including the loan

belonging to Jones, to CWABS, Inc. Asset-Backed Certificates,

Series 2004-7 (CWABS), a securitized trust.  The defendant, BNY

Mellon, was named as trustee of CWABS.

---

[2] "Because our review is de novo, we accord no deference to the
decision of the motion judge."  DeWolfe v. Hingham Ctr., Ltd.,
464 Mass. 795, 799 (2013).
[3] "A slip of paper sometimes attached to a negotiable instrument
for the purpose of receiving further indorsements when the
original paper is filled with indorsements."  Black's Law
Dictionary 9th ed. (2009).

2

MERS assigned the Jones mortgage to BNY Mellon in its capacity as trustee of CWABS. This assignment was signed by Amanda Farrar, assistant vice-president of Countrywide. Farrar did not fill in the date on the line immediately preceding her signature, but the notary signature avers that Farrar personally appeared before the notary and signed on November 20, 2006.[4] A December 10, 2001, corporate resolution of MERS gave officers of Countrywide authority to sign assignments of mortgages (for which Countrywide held the note) on behalf of MERS. Farrar was also an officer and authorized loan servicing representative with authority to sign assignments for Countrywide.

Jones fell behind on his payments in October, 2006. BNY Mellon filed a complaint to foreclose on Jones's property pursuant to the Servicemembers Civil Relief Act on November 6, 2006. BNY Mellon sent notice to Jones of its intention to foreclose and gave notice of foreclosure sale in January of 2007[5]. The bank subsequently foreclosed in December of 2007.[6]

Discussion. In order to foreclose on a mortgage, the foreclosing entity must hold the mortgage at the time of the notice of sale and the subsequent foreclosure sale. United States Bank Natl. Assn. v. Ibanez, 458 Mass. 637, 648 (2011)

---

[4] Subsequently, two "confirmatory" assignments were also made.
[5] BNY Mellon maintains that it held the note, indorsed in blank, at the time it exercised the power of sale. Because the rule announced in Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 589 (2012), is prospective only, the date on which BNY Mellon held the note is not a material fact, and we do not address it.
[6] Jones filed for bankruptcy, but the bankruptcy court lifted the automatic stay, and the foreclosure sale took place on December 3, 2007. The foreclosure deed was executed, transferred to BNY Mellon, and recorded on February 25, 2008.

3

(Ibanez), citing In re Schwartz, 366 B.R. 265, 269 (Bankr. D. Mass. 2007) ("Acquiring the mortgage after the entry and foreclosure sale does not satisfy the Massachusetts statute"). Because CWABS was not the original mortgage holder, BNY Mellon, as trustee of CWABS, must show that the undisputed facts establish that it held a valid assignment of the mortgage as a matter of law before it gave notice of foreclosure sale. See Ibanez, supra at 648.

In the Superior Court Jones challenged the validity of the assignment, arguing that Farrar did not have authority to sign the assignment notarized on November 20, 2006. Farrar had authority to assign this mortgage on behalf of MERS as a matter of law pursuant to G. L. c. 183, § 54B. See Culhane v. Aurora Loan Servs. of Neb., 826 F. Supp. 2d 352, 361 (D. Mass. 2011); In re Marron, 455 B.R. 1, 8 (Bankr. D. Mass. 2011). In addition, the undisputed corporate resolution of MERS and the related Countrywide document establish that Farrar had actual authority to sign on behalf of MERS.

On appeal, Jones re-characterizes these arguments as standing claims, but the defendants readily concede standing. The sole issue of legal significance is whether an assignment preceded the notice of foreclosure. The notary jurat on the first assignment states that the document was signed by Farrar on November 20, 2006, i.e., before the notice of foreclosure. In the absence of a dispute of fact as to either the date of Farrar's signature or the authenticity of Farrar's signature, see Global NAPs, Inc. v. Awiszus, supra 499 n.16, BNY Mellon was

4

entitled to judgment as a matter of law.[7]  See Ibanez, 458 Mass.

at 648.  Jones's remaining arguments challenge the confirmatory

assignments, which, in light of the validity of the November 20,

2006, assignment, are not material to the outcome of this

appeal.[8]

> Judgment affirmed.
>
> By the Court (Cohen, Meade
>     & Sullivan, JJ.),


Clerk

Entered:  December 6, 2013.

---

[7] At oral argument the parties represented that no discovery was
taken concerning the circumstances of the signing.  There is no
record evidence to suggest that Farrar signed on any date other
than November 20, 2006.  Jones has relied on the claims raised in
his pleadings.  On summary judgment, the nonmoving party may not
rely on the allegations of the complaint, but must instead
affirmatively dispute by means of competent evidence the material
facts contained in the moving party's statement of undisputed
facts.  See Global NAPs, Inc. v. Awiszus, supra.
[8] Jones's appellate brief also raised questions regarding the
recording of the assignments.  However, as Jones properly
acknowledged at oral argument, a "valid assignment of a mortgage
gives the holder of that mortgage the statutory power to sell
after a default regardless whether the assignment has been
recorded.  See G. L. c. 183, § 21."  Ibanez, supra at 654.

5